IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DALE YARRINGTON,<br><br>Defendant. | 08-CR-62-LRR<br><br><br>**ORDER** |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Dale Yarrington's Motion to Suppress ("Motion") (docket no. 57).

## *II. RELEVANT PRIOR PROCEEDINGS*

On May 14, 2009, Defendant filed the Motion. On May 16, 2009, the government filed a Resistance (docket no. 59). On May 18 and 19, 2009, the court held a hearing ("Hearing") on the Motion. At the Hearing, the court orally denied the Motion. However, the court promised to issue a written order, in which the court would more fully set forth its findings and conclusions. The instant Order follows.

## *III. FINDINGS OF FACT*

J.M., an inmate in the Bremer County, Iowa Jail ("Jail"), has cooperated with Drug Enforcement Administration ("DEA") Special Agent Dustin Wernli ("S/A Wernli") since November of 2008. On January 2, 2009, J.M. executed a Plea Agreement (Def.'s Ex. AA) (docket no. 63-2), in which he agreed to cooperate with the government.

S/A Wernli told J.M. that while in the Jail, he should keep his ears open and let S/A Wernli know if he heard anything agents might find of interest. S/A Wernli did not give J.M. names of specific individuals to talk to in the Jail. S/A Wernli never mentioned

Defendant's name to J.M. S/A Wernli never provided J.M. with specific questions to ask others in Jail. S/A Wernli is not aware of any other agents that may have communicated with J.M.

J.M. was housed in the same unit at the Jail as Defendant for approximately five months prior to Defendant's trial. J.M. spoke with Defendant daily. J.M. first spoke with Defendant about Defendant's case in January of 2009. They talked about Defendant's case four to five times. J.M. testified that his conversations with Defendant were not at the express or implied direction of any law enforcement officer or government attorney.

## IV. ANALYSIS

Defendant moves to suppress alleged statements made by Defendant to J.M. on the grounds that these statements were obtained in violation of Defendant's Sixth Amendment right to counsel.[1] The burden to prove a violation of the Sixth Amendment right to counsel is on the Defendant, however, if the burden were on the government the court's findings would be the same. *See United States v. Washington*, 318 F.3d 845, 860 (8th Cir. 2003) ("In order for [the defendant] to prevail on [a claimed violation of his Sixth Amendment right to counsel], he must show . . . ."). To prevail on this claim, Defendant must show: (1) Defendant's right to counsel had attached, (2) J.M. was a government agent and (3) J.M. deliberately sought incriminating statements from Defendant. *Id.* The court considers each of these three elements, in turn.

### *A. Right to Counsel*

"[T]he Sixth Amendment right to counsel attaches only when formal judicial proceedings are initiated against an individual by way of indictment, information,

---

[1] At the Hearing, Defendant also moved the court to suppress Defendant's alleged statements under Defendant's Fifth Amendment right to counsel. The Fifth Amendment right to counsel is inapposite to the facts of the present case. *See Michigan v. Jackson*, 475 U.S. 625, 629 (1986) ("The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations.").

arraignment[] or preliminary hearing." *United States v. Gouveia*, 467 U.S. 180, 185 (1984). "Once a defendant's Sixth Amendment right to counsel has attached, he is denied that right when federal agents 'deliberately elicit' incriminating statements from him in the absence of his lawyers." *Kuhlmann v. Wilson*, 477 U.S. 436, 457 (1986) (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)).

The parties did not dispute whether Defendant's right to counsel had attached. On October 7, 2008, a grand jury returned the Indictment (docket no. 1). On December 8, 2008, Defendant had his Initial Appearance and Arraignment. While the court can not determine the exact date Defendant allegedly made the statements, Defendant was not in custody until after his Initial Appearance and Arraignment. Accordingly, the court found Defendant's Sixth Amendment right to counsel attached prior to his alleged statements.

### B. J.M. Was Not Government Agent

J.M. is a jailhouse informant. "'An informant becomes a government agent . . . *only* when the informant has been instructed by the police to get information about a *particular* defendant.'" *United States v. Johnson*, 338 F.3d 918, 921 (8th Cir. 2003) (quoting *United States v. Birbal*, 113 F.3d 342, 346 (2d Cir. 1997)) (emphases in *Johnson*). An informant who has a general agreement with the government to disclose knowledge of illegal activity is not a government agent for the purposes of the Sixth Amendment right to counsel until the witness is instructed by law enforcement to obtain information about a specific defendant. *Moore v. United States*, 178 F.3d 994, 999-1000 (8th Cir. 1999).

No government official instructed J.M. to obtain information about a specific person. J.M. was instructed only to keep his ears open and inform agents of anything of interest. S/A Wernli never mentioned Defendant's name to J.M. The court found that Defendant failed to satisfy his burden to show J.M. was a government agent. Accordingly, the court found the alleged statements were not obtained in violation of Defendant's Sixth

3

Amendment rights.

### C. Whether J.M. Deliberately Elicited Statements From Defendant

"[T]he Sixth Amendment is not violated whenever—by luck or happenstance—the [government] obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). "'[T]he primary concern . . . is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation . . . .'" *Moore,* 178 F.3d at 1000 (quoting *Kuhlmann*, 477 U.S. at 459) (citations omitted). "The defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.*

Because the court found J.M. was not a government agent, the court need not determine whether J.M. deliberately elicited statements from Defendant. The parties did not present evidence with respect to this element. Nevertheless, the court found Defendant failed to satisfy his evidentiary burden to show J.M. deliberately elicited the alleged statements from Defendant. Therefore, Defendant's Sixth Amendment rights were not violated.

### V. CONCLUSION

In light of the foregoing, the court **DENIED** the Motion.

**IT IS SO ORDERED**

**DATED** this 26th day of May, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA